# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**-vs-**<br><br>**CHONG IU PHU,**<br>**a/k/a Alex Phu,**<br><br>**Defendant.** | ) | **No. CR-24-146-R** |

## PLEA AGREEMENT

### Introduction

1. This Plea Agreement, in conjunction with a Plea Supplement filed contemporaneously under seal, contains the entire agreement between Defendant Chong Iu Phu and the United States concerning Defendant's plea of guilty in this case. No other agreement or promise exists, nor may any additional agreement be entered into unless in writing and signed by all parties. Any unilateral modification of this Plea Agreement is hereby rejected by the United States. This Plea Agreement applies only to the criminal violations described and does not apply to any civil matter or any civil forfeiture proceeding except as specifically set forth. This Plea Agreement binds only the United States Attorney's Office for the Western District of Oklahoma and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. If Defendant does not accept the terms of this Plea Agreement by **June 1, 2026**, the offer is withdrawn.

**Guilty Plea**

2. Defendant agrees to enter a plea of guilty to Count 1 of the Indictment in Case Number CR-24-146-R, charging drug conspiracy involving over 1,000 kilograms of a mixture or substance containing a detectable amount of marijuana and 1,000 or more marijuana plants, in violation of 21 U.S.C. § 846.

3. To be found guilty of violating 21 U.S.C. 846, as charged in the Indictment, Defendant must admit, and does admit, that during the period from in or about August 2019 through in or about March 2023, in the Western District of Oklahoma: (1) Defendant entered into an agreement with at least one other person to violate federal drug laws—here, those prohibiting the possession with intent to distribute and the distribution of marijuana and marijuana plants; (2) he knew the essential objective of the conspiracy; (3) he knowingly and voluntarily involved himself in the conspiracy; (4) there was interdependence among the members of the conspiracy; and (5) the conspiracy involved more than 1,000 kilograms of a mixture or substance containing a detectable amount of marijuana and 1,000 or more marijuana plants. The Defendant additionally admits the facts set forth in the Statement of Facts filed under seal with this Plea Agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt. The Statement of Facts, which is hereby incorporated into this Plea Agreement, constitutes a stipulation of facts for purposes of Section 1B1.2(c) of the United States Sentencing Guidelines.

4. In addition, Defendant understands that Defendant will be required to provide a statement at the plea hearing consistent with the above-listed facts and sufficient

Defendant's Initials

for the Court to find that a factual basis exists to support a guilty plea. Defendant's failure to provide a sufficient factual basis to support a guilty plea at the plea hearing, or any statements made by Defendant at that hearing that are inconsistent with the above-listed facts including the incorporated Statement of Facts, shall breach this Plea Agreement.

**Maximum Penalty, Restitution, and Special Assessment**

5. The maximum penalty that could be imposed as a result of this plea is not less than ten (10) years and up to life imprisonment, a fine of $10,000.000.00, or both such fine and imprisonment, as well as a mandatory special assessment of $100.00 and a term of supervised release of not less than five (5) years and up to life.

6. In addition to the punishment described above, a plea of guilty can affect immigration status. If Defendant is not a citizen of the United States, a guilty plea may result in deportation and removal from the United States, may prevent Defendant from ever lawfully reentering or remaining in the United States, and may result in the denial of naturalization. Further, if Defendant is not a citizen of the United States, Defendant knowingly and voluntarily waives any right, pursuant to 18 U.S.C. § 4100, *et seq.*, to request to transfer service of any sentence of imprisonment or part thereof to Defendant's home country. If Defendant is a naturalized citizen of the United States, a guilty plea may result in denaturalization.

7. In addition, the Court must order the payment of restitution to any victim(s) of the offense. Pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A, the parties agree that, as part of the sentence resulting from Defendant's plea, the Court will enter an order of

Defendant's Initials

restitution to all victims of Defendant's relevant conduct as determined by reference to the United States Sentencing Guidelines (the "Guidelines").

8. Defendant agrees to pay any special assessment(s) to the Office of the Court Clerk immediately following sentencing. Defendant understands that any fine or restitution ordered by the Court is immediately due unless the Court provides for payment on a date certain or in installments. If the Court imposes a schedule for payment of restitution, Defendant agrees that such a schedule represents a minimum payment obligation and does not preclude the United States Attorney's Office from pursuing other means by which to satisfy Defendant's full and immediately enforceable financial obligations. Defendant accepts a continuing obligation to pay in full, as soon as possible, any financial obligation imposed by the Court. Defendant further understands that a failure to abide by the terms of any restitution schedule imposed by the Court may result in further action by the Court.

9. For certain statutory offenses, the Court must also impose a term of supervised release, which Defendant will begin to serve after being released from custody. For all other offenses, the Court may impose a term of supervised release to be served following release from custody. During the term of supervised release, Defendant will be subject to conditions that will include prohibitions against violating local, state, or federal law, reporting requirements, restrictions on travel and residence, and possible testing for controlled substance use. If Defendant violates the conditions of supervised release, the Court may revoke Defendant's supervised release and sentence Defendant to an additional

Defendant's Initials

term of imprisonment. This additional term of imprisonment would be served without credit for the time Defendant successfully spent on supervised release. When combined, the original term of imprisonment and any subsequent term of imprisonment the Court imposes may exceed the statutory maximum prison term allowable for the offense.

**Financial Disclosures**

10. Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or any other third party. Upon request by the United States, Defendant agrees: (1) to complete truthfully and sign under penalty of perjury a Financial Statement of Debtor by the change-of-plea hearing, or a date otherwise agreed to by the United States; and (2) to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to such changes. Defendant understands that the United States will take Defendant's compliance with these requests into account when it makes a recommendation to the Court regarding Defendant's acceptance of responsibility.

11. Defendant also expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant to evaluate Defendant's ability to satisfy any financial obligations imposed by the Court. Finally, Defendant agrees to notify the Financial Litigation Program ("FLP") of the United States Attorney's Office and to obtain permission from FLP before Defendant transfers any interest in property with a value exceeding $1,000.00, owned directly, indirectly, individually, or jointly by Defendant,

Defendant's Initials

including any interest held or owned under any name, including trusts, partnerships, or corporations. Defendant acknowledges a continuing obligation to notify and obtain permission from FLP for any transfers of the above-described property until full satisfaction of any restitution, fine, special assessment, or other financial obligations imposed by the Court.

**Forfeiture**

12. Defendant agrees to forfeit to the United States voluntarily and immediately all of Defendant's right, title, and interest in and to all assets which are subject to forfeiture pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461(c),[1] including but not limited to:

1. a forfeiture money judgment in the sum of between $2,598,613.00, and $3,598,613.00, which represents the value of proceeds derived from the commission of the offense of conviction and the equity of assets subject to forfeiture as facilitating property for which the government has chosen to forego direct forfeiture, instead seeking this money judgment;

2. real property located at 15788 South 369th West Avenue, Bristow, Oklahoma 74010, fully described as:

   The Southeast Quarter of the Northeast Quarter Southeast Quarter (SE/4 NE/4 SE/4) of Section Twenty-four (24). Township Seventeen (17) North, Range Eight (8) East of the Indian Base and Meridian, Creek County, State of Oklahoma, according to the U.S. Government Survey thereof;

   AND

   The Northeast Quarter of the Southeast Quarter (NE/4 SE/4) of Section Twenty-four (24), Township Seventeen (17) North, Range Eight (8) East of the Indian Base and Meridian, Creek County, State of Oklahoma, according to the recorded plat

[1] Assets are listed using numerals rather than lower-case letters per the standard format due to the large number of line items.

Defendant's Initials

thereof. LESS AND EXCEPT the Southeast Quarter of the Seventeen (17) North, Range eight (8) East of the Indian Base and Meridian, Creek County, State of Oklahoma, and according to the U.S. Government Survey thereof;

AND

The Southeast Quarter of the Southeast Quarter (SE/4 SE/4) of Section Twenty-four (24), Township Seventeen (17) North, Range Eight (8) East of the Indian Base and Meridian, Creek County, State of Oklahoma, according to the U.S. Government Survey thereof;

3. real property located at 1900 Lowry Avenue, Oklahoma City, Oklahoma 73129, fully described as:

Lot Five (5), Block Two (2), of Oklahoma Industrial Park, and Addition to the City of Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof;

4. real property located at 1000 Southeast 44th Street, Oklahoma City, Oklahoma 73129, fully described as:

A tract of land lying in the Northwest Quarter (NW/4) of Section Twenty-Three (23), Township Eleven (11) North, Range Three (3) West of the Indian Meridian, Oklahoma County, Oklahoma, being more particularly described as follows: Beginning at the Northwest corner of the NW/4 of said Section 23; Thence N89'54'39"E along the North line of said NW/4 a distance of 250.00 feet; Thence S00'05'21"E and parallel with the West line of said NW/4 a distance of 343.00 feet; Thence S89'54'39"W a distance of 250.00 feet to a point on the West line of said NW/4; Thence N00'05'21"W along the West line of said NW/4 a distance of 343.00 feet to the Northwest corner of said NW/4 and to the Point of Beginning;

5. real property located at 23515 East 6th Avenue, Yale, Oklahoma 74085, fully described as:

A tract of land in the Northeast Quarter (NE/4) of Section Twenty-four (24), Township Nineteen (19) North, Range Five (5) East of the Indian Meridian, Payne County, State of

Defendant's Initials

Oklahoma, being more particularly described as follows: Beginning at a point 660.0 feet due North and 660.00 feet due West of the Southeast corner (SE/C) of the Northeast of said Northeast Quarter (NE/4) of said Section Twenty-four (24); thence due West 800.00 feet; thence due North parallel to the East line of said Northeast Quarter (NE/4) a distance of 1980 feet more or less to the North line of said Northeast Quarter (NE/4); thence East along the North line of said Northeast Quarter (NE/4) a distance of 800.00 feet; thence due South parallel to the East line of said Northeast Quarter (NE/4) a distance of 1980 feet more or less to the Point of Beginning;

6. real property located at 2024 South Main Street, Newcastle, Oklahoma 73065, fully described as:

A tract of land being a part of the North Half (N/2) of the Southwest Quarter (SW/4) of Section Twenty-six (26), Township Nine (9) North, Range Four (4) West of the Indian Meridian, McClain County, Oklahoma, being more particularly described as follows: Beginning at the Northwest Corner of the South 53 acres of the North Half of the Southwest Quarter (N/2 SW/4) of Section Twenty-six (26), Township Nine (9) North, Range Four (4) West, McClain County, Oklahoma; thence South 228 feet to a point; thence East 573 feet to a point; thence North 228 feet to a point; thence West 573 feet to the point of beginning;

AND

A piece, parcel or tract of land lying in the Southwest Quarter (SW/4) of Section Twenty-six (26), Township Nine (9) North, Range Four (4) West of the Indian Meridian, McClain County, Oklahoma, being more particularly described as follows: Commencing at the SW/Corner of said SW/4; thence N 00'19'22" W along the West line of said SW/4 a distance of 2197.41 feet to the NW/Corner of the South Fifty-three (53) acres of the N/2 SW/4; thence N 89'40'05" E along the North line of said South 53 acres to the N/2 of said SW/4 a distance of 219.18 feet to a point on the East Right of Way line of US Highway No. 62, said point being the point of beginning; thence N 00'12'20" W along said Right of Way line a distance of 60 feet; thence N 89'40'05" E and parallel with the North

Defendant's Initials

line of the South 53 acres of the N/2 of said SW/4 a distance of 726 feet; thence South 00'12'20" E and parallel with East Right of Way line of said US Highway No. 62 a distance of 60 feet to a point on the North line of the South 53 acres of the N/2 of said SW/4; thence S 89'40'05" W along said North line a distance of 726 feet to the point or place of beginning;

AND

A piece, parcel or tract of land lying in the Southwest Quarter (SW/4) of Section Twenty-six (26), Township Nine (9) North, Range Four (4) West of the Indian Meridian, McClain County, Oklahoma, being more particularly described as follows: Commencing at the SW/Corner of said SW/4; thence N 00' 19'22" W along the West line of said SW/4 a distance of 2197 .41 feet to the NW/Corner of the South 53 acres of the North Half of the said SW/4; thence N 89'40'05" E along the North line of said South 53 acres of the North Half of said SW/4 a distance of 219.18 feet to a point on the East right-of-way line of US Highway No. 62; thence N 00'12'20" W along said right-of-way line a distance of 60.00 feet to the point of beginning; thence continuing N 00'12'20" W along said right-of-way line a distance of 240.00 feet; thence N 89'40'05" E and parallel with the North line of the South 53 acres of the N/2 of said SW/4 a distance of 726.00 feet; thence S 00'12'20" E and parallel with the East right-of-way line of said US Highway No. 62 a distance of 240.00 feet to a point 60.00 feet North of the North line of the South 53 acres of the North Half of said SW/4; thence S 89'40'05" W and parallel with the said North line a distance of 726.00 feet to the point of beginning;

AND

A tract of land being a part of the Southwest Quarter (SW/4) of Section Twenty-six (26), Township Nine (9) North, Range Four (4) West of the Indian Meridian, McClain County, Oklahoma, being more particularly described as follows: Commencing at the Northwest (NW/) Corner of the South 53 acres of the North Half (N/2) of the Southwest Quarter (SW/4) of said Section 26; thence N 89'40'05" E along the North line of said South 53 acres of the North Half (N/2) Southwest Quarter (SW/4) a distance of 219.18 feet to a point on the East

Defendant's Initials

Right-of-way line of US Highway No. 62; thence S 00'12'20" E along said Right-of-way line a distance of 228.00 feet to the point of beginning; thence N 89'40'05" E a distance of 353.82 feet; thence N 00'19'22" W a distance of 228.00 feet; thence N 89'40'05" E a distance of 132.90 feet; thence S 00'12'20" E a distance of 297.00 feet; thence S 89'40'05" W a distance of 486.25 feet; to a point on the East Right-of-way line of State Highway No. 62; thence N 00'12'20" W along said Right-of way line a distance of 69.00 feet to the Point of Beginning;

7. real property located at 13437 North 366th Road, Wewoka, Oklahoma, fully described as:

The Southeast Quarter of the Southeast Quarter (SE/4 SE/4) and the Southwest Quarter of the Southeast Quarter (SW/4 SE/4) and the Northeast Quarter of the Southeast Quarter (NE/4 SE/4) Less 7.422 Acres for Highway, all in Section Nineteen (19), Township Seven (7) North, Range Eight (8) East, Seminole County, Oklahoma;

8. real property located at 295543 East 1620 Road, Marlow, Oklahoma 73055, fully described as:

A tract of land lying in part of the NE1/4 and NW1/4 of Section 9, Township 2 North, Range 5 West, I.M., Stephens County, Oklahoma, described as beginning at the NW/corner of the NE1/4 of Section 9, Township 2 North, Range 5 West, I.M., Stephens County, Oklahoma; thence S 89'48'38"E along the North line of said NE1/4, a distance of 1025.05 feet; thence S 05'28'16"W a distance of 1821.35 feet; thence N 85'00'25"W a distance of 849.12 feet to a point on the West line of said NE1/4, said point being S 00'10'50"E, 1742.54 feet from the NE/corner of the NW1/4; thence N 84'31'05"W a distance of 588.06 feet; thence N 00'10'50"W parallel with the East line of said NW1/4, a distance of 1688.29 feet to a point on the North line of said NW1/4; thence S 89'48'43"E along the North line of said NW1/4, a distance of 585.20 feet to the point of beginning;

9. real property located at 601 NW 114th St., Oklahoma City, Oklahoma 73013, fully described as:

Defendant's Initials

Lots Forty-six (46), Forty-Seven (47) and Forty-eight (48), in Block Fifty-two (52), of COLLEVE PARK ADDITION to Oklahoma City, Oklahoma County, Oklahoma according to the recorded plat thereof;

10. real property located at 2405 NW 158th Street, Oklahoma City, Oklahoma, fully described as:

    Lot Eight (8), Block Six (6), NORTHHAMPTON SECTION II, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof;

11. real property located at 2328 NW 154th Street, Oklahoma City, Oklahoma, fully described as:

    Lot Twenty-five (25), in Block Seven (7), of ROBIN RIDGE SECTION 2, to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof;

12. real property located at 12800 Southwest 58th Street, Mustang, Oklahoma 73064, fully described as:

    Part of the South Half (S/2) of the Southwest Quarter (SW/4) of Section Twenty (20), Township Eleven (11) North, Range Five (5) West of the Indian Meridian, Canadian County, Oklahoma, more particularly described as follows: Commencing at the Southwest Corner of the S/2 of the SW/4 of Section 20; thence South 89'46'58" East along the South line of said S/2 SW/4 a distance of 1621.76 feet; thence continuing North 0'05'50" West a distance of 439.57 feet to the point of beginning; thence continuing North 0'05'50" West a distance of 439.57 feet; thence North 89'48'51" West a distance of 432.26 feet; thence South 24'25'03" West a distance of 481.85 feet; thence South 89'47'54" East a distance of 632.10 feet to the point of beginning;

13. approximately $66,410.00 in United States Postal Service money orders seized from 4700 SW 25th Circle, Oklahoma City, Oklahoma, 73128;

Defendant's Initials

14. approximately $50,000.00 in United States Postal Service money orders seized from 4700 SW 25th Circle, Oklahoma City, Oklahoma, 73128;

15. all funds held in RCB Bank account number XXXXXXX6990:2

16. all funds held in First National Bank account number XXXXX8242;[3]

17. all funds held in Quail Creek Bank account number XXXXX8362;[4]

18. all funds held in First Fidelity Bank account number XXXXX2021;[5]

19. all funds held in First National Bank of Oklahoma account number XXXXX1090;[6]

20. all funds held in First Enterprise Bank account number XXXXX0331;[7]

21. all funds held in Bank of America account number XXXXX4719;[8]

---

2 On April 10, 2024, law enforcement executed seizure warrant MJ-24-317-SM on this account. The account balance of $173,211.82 was frozen pending forfeiture.

3 On April 10, 2024, law enforcement executed seizure warrant MJ-24-309-SM on this account. The account balance of $16.77 was frozen pending forfeiture.

4 On April 10, 2024, law enforcement executed seizure warrant MJ-24-314-SM on this account. The account balance of $2,296.98 was frozen pending forfeiture.

5 On April 10, 2024, law enforcement executed seizure warrant MJ-24-313-SM on this account. The account balance of $673.06 was frozen pending forfeiture.

6 On April 10, 2024, law enforcement executed seizure warrant MJ-24-311-SM on this account. The account balance of $54.08 was frozen pending forfeiture.

7 On April 10, 2024, law enforcement executed seizure warrant MJ-24-310-SM on this account. The account balance of - $137.27 was frozen pending forfeiture.

8 On April 10, 2024, law enforcement executed seizure warrant MJ-24-312-SM on this account. Bank of America informed law enforcement that the account had been closed prior to the execution of the warrant.

Defendant's Initials

22. approximately $735.77 in funds seized from Quail Creek Bank account number XXXXXX0555;

23. a 2021 Toyota Highlander, bearing vehicle identification number (VIN) 5TDDZRBH8MS532761;

24. a Kubota L4701 tractor and attachments;

25. a 2020 Mercedes Benz E-450, bearing VIN WDDZF6JB3LA753048;

26. a 2018 Mercedes Benz GLS-450, bearing VIN 4JGDF6EE0JB040040;

27. a 2020 Mercedez-Benz Sprinter Van, bearing VIN W1W4EBHY7LT040740;

28. a 2019 Lexus RX-350, bearing VIN 2T2ZZMCA7KC122366;

29. a 2020 Toyota Highlander, bearing VIN 5TDZZRAH0LS503311;

30. a 2020 Toyota Rav4, bearing VIN JTMR6RFV5LD002188;

31. approximately $54,307.00 in U.S. currency;

32. approximately $16,679.00 in U.S. currency;

33. a 100 troy ounce silver bar;

34. a stainless-steel Rolex Submariner Model 126610LV watch, bearing serial number N22320K8;

35. an 18-karat rose gold Rolex Day-Date Model 128235 watch with diamonds, bearing serial number U2S86855;

36. a stainless-steel Rolex Submariner Model 126610LV watch, bearing serial number 986P28V5;

37. an 18-karat gold and stainless-steel Rolex Date Model 15203 watch, bearing serial number Y519683;

38. a stainless-steel Rolex Lady Datejust Model 79174 watch, bearing serial number F314008;

Defendant's Initials

39. an 18-karat white gold and diamond Tiffany and Company men's band;
40. an 18-karat white gold and diamond Tiffany and Company women's band;
41. an 18-karat yellow gold Van Clef and Arpels Alhambra necklace, bearing serial number BL217543;
42. a pair of Van Cleef and Arpels Alhambra earrings, bearing serial numbers JB868302 and JB868309;
43. an 18-karat Cartier Love bracelet with diamonds, bearing serial number SKE662;
44. an 18-karat rose gold Van Cleef and Arpels Magic Alhambra necklace, bearing serial number JE132688;
45. a zip-back pair of Balmain Moneta pumps;
46. a crystal-embellished pair of Valentino Garavani pumps;
47. a pair of Valentino rain boots bearing a "V" logo;
48. a nude pair of Louis Vuitton Blossom pumps;
49. a jacquard pair of men's Givenchy City sneakers;
50. a pair of Chanel wedge sandals;
51. a pair of Burberry Burch ankle boots;
52. a Louis Vuitton monogram coat;
53. a Christian Dior logo poncho;
54. a Louis Vuitton Evermore shawl;
55. a Gucci Queen Margaret wallet;
56. a Louis Vuitton Capucines wallet;

Defendant's Initials

57. a Louis Vuitton Lockme tri-fold wallet;

58. a Chanel lambskin wallet;

59. a Louis Vuitton Electric EPI Pochette clutch;

60. a Louis Vuitton Felicie Pochette clutch;

61. two Louis Vuitton Capucines Taurillon leather purses;

62. a Louis Vuitton Alma BB purse;

63. a Louis Vuitton Reverse Mini Boite Chapeau purse;

64. a Louis Vuitton Néonoé monogram tote;

65. two Louis Vuitton New Wave purses;

66. two Louis Vuitton EPI Twist purses;

67. two Louis Vuitton Mahina purses;

68. a Louis Vuitton Keepall Bandouliere duffle bag;

69. a Louis Vuitton Saint Germaine Empreinte purse;

70. a Louis Vuitton Empreinte Madeleine purse;

71. a Chanel flap bag;

72. a see-through Chanel flap bag with an insert;

73. a Chanel Trendy crossbody purse;

74. a Chanel Classic flap purse;

75. a Chanel Pink Velvet flap purse;

76. a Chanel mini clutch;

77. a Chanel flap purse;

78. two Christian Dior Small Lady Dior bags;

Defendant's Initials

79. a Christian Dior saddle pouch;

80. two Christian Dior saddle bags;

81. a Christian Dior Butterfly book tote;

82. a Bulgari Serpenti drawstring bucket purse;

83. a Bulgari Mini Serpenti purse;

84. a Gucci monogram tote;

85. a Gucci Ophidia medium tote bag;

86. a Gucci Dionysus shoulder bag;

87. a Gucci Ken Scott floral bag;

88. a Gucci Monogram tote bag;

89. a Gucci Queen Margaret purse;

90. two Fendi First clutches;

91. a Fendi Baguette purse;

92. a Fendi Fendigraphy Crescent purse;

93. a Fendi Fendigraphy Crescent Nano purse;

94. a Valentino logo purse;

95. an Yves St. Laurent Kate Leopard purse;

96. an Yves St. Laurent monogram shearling purse;

97. an Yves St. Laurent envelope purse;

98. a Jimmy Choo Bon Bon bucket purse;

99. a Tory Burch T-Lock purse;

Defendant's Initials

100. a Tory Burch Diana flap purse;

101. a Tory Burch mini purse;

102. a Tory Burch mini Robinson purse;

103. a Tory Burch McGraw crossbody purse; a Coach floral wristlet;

104. a Tory Burch quilted tote;

105. a Burberry Haymarket toiletry pouch;

106. a pair of Chanel sunglasses with pearl accents;

107. a pair of Christian Dior Diorama sunglasses;

108. a pair of Louis Vuitton LV monogram sunglasses;

109. a pair of Prada Model SPR58N sunglasses, bearing serial number BP11209826;

110. a pair of Prada Linea Rossa sunglasses Model SPR541;

111. a pair of Christian Dior Lady Dior sunglasses;

112. a pair of Jimmy Choo rose frame sunglasses;

113. a pair of Jimmy Choo gold frame sunglasses;

114. a Chanel brooch with crystals;

115. a Louis Vuitton panda key chain;

116. a Louis Vuitton silk scarf;

117. a Gucci Monogram silk scarf;

118. two Louis Vuitton monogram scarves;

119. a Chanel silk scarf;

Defendant's Initials

120. a Louis Vuitton "Game On" monogram scarf;

121. two Valentino reversible Signature logo belts;

122. a Louis Vuitton leather belt;

123. an Hermes reversible belt with silver buckle;

124. a Dolce and Gabbana leather belt with heart buckle;

125. a Chanel leather belt with logo buckle;

126. a Valentino reversible belt with logo buckle;

127. a Gucci reversible belt with logo;

128. a Gucci belt with logo;

129. a Louis Vuitton reversible belt with logo buckle;

130. two Hermes reversible belts with logo buckles;

131. an Hermes logo buckle;

132. two Gucci belts with logo buckles;

133. a Chanel reversible belt with logo buckle;

134. a Gucci nylon belt with rhinestone butterfly clasp;

135. a Louis Vuitton reversible belt;

136. a Louis Vuitton reversible Damier belt;

137. a Louis Vuitton Cruise belt;

138. a Christian Dior canvas belt;

Defendant agrees that the listed assets were involved in the violation to which Defendant is pleading guilty.

Defendant's Initials

13. Defendant further agrees that if he is unable to satisfy the money judgement identified in paragraph 12 via a direct payment, the following named properties are subject to forfeiture, along with any other identifiable property, as substitute property, pursuant to 21 U.S.C. § 853(p), including:

a. real property located at 1225 East 33rd Street, Edmond, Oklahoma 73013, fully described as:

> Lot One (1), Block One (1) of Christman Parke at 33rd Street to Edmond, Oklahoma County, Oklahoma, according to the recorded plat thereof;

b. real property located at 1253 East 33rd Street, Edmond, Oklahoma 73013, fully described as:

> Lot Four (4), Block Two (2) of Christman Parke at 33rd Street to the City of Edmond, Oklahoma County Oklahoma, according to the recorded plat thereof;

c. real property located at 1261 East 33rd Street, Edmond, Oklahoma 73013, fully described as:

> Lot Two (2), in Block Three (3), of Christman Parke at 33rd Street to the City of Edmond, Oklahoma County, Oklahoma, according to the recorded plat thereof;

d. real property located at 1804 Northwest 145th Street, Edmond, Oklahoma 73013, fully described as:

> Lot Seven (70), in Block Nineteen (19), of MARBLELEAF ADDITION SECTION 4, to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof;

e. real property located at 2721 Northwest 58th Street, Oklahoma City, Oklahoma 73112, fully described as:

> Lot Eleven (11), in Block Seven (7), of ORTNER's FAIRDALE ADDITION, Section Four, an Addition to

Defendant's Initials

Oklahoma City, Oklahoma County, Oklahoma, according to the recorded pat thereof;

f. real property located at 2340 Cashion Place, Oklahoma City, Oklahoma 73112, fully described as:

Lot Five (5) and the East 33 feet of Lot Six (6) Block Two (2), RICHARDS PLACE, an Addition to Oklahoma City, Oklahoma County, Oklahoma, being a subdivision of Block Twenty-Seven (27) in West-Point Addition, according to the recorded plat thereof;

g. real property located at 2316 Cashion Place, Oklahoma City, Oklahoma 73112, fully described as:

The West 21 feet of Lot Nine (9) and all of Lot Ten (10) and the East 12 feet of Lot Eleven (11), Block Two (2), a Subdivision of Lot 28 West point Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof;

h. real property located at 3209 Warwick Place, Edmond, Oklahoma 73013, fully described as:

Lot Twenty-Two (22), of Block One (1) in Thornbrooke Manor, 3rd Addition, Phase 2, A Part of the SW 1/4 of Section 6, T13N, R2W, I.M. Edmond, Oklahoma County, Oklahoma, according to the plat thereof;

i. real property located at 1808 East 32nd Street, Edmond, Oklahoma 73013, fully described as:

Lot Thirteen (13) in Block Two (2) in Thornbrooke Manor 3rd Addition - Phase 2, a part of the SW1/4 of Section 6, T13N, R2W, I.M. an addition to the City of Edmond City, Oklahoma County, Oklahoma, according to the recorded plat thereof;

j. real property located at 9900 SW 36th Street, Yukon, Oklahoma 73099, fully described as:

Lot Eight (8), of Block Eleven (11), in Wimberly Estates Section 3, an addition to the City of Oklahoma City, Canadian County, Oklahoma, according to the recorded plat thereof;

Defendant's Initials

k. real property located at 870500 South 3445 Road, Chandler, Oklahoma 74834, fully described as:

A tract as beginning at the NE/c of said NE1/4; thence S 01'24'13"E along the East line of said NE1/4 a distance of 1320.00 feet; thence S 89'47'30"W a distance of 660.00 feet; thence N 01'24'13"W a distance of 1320.00 feet; thence N 89'47'30"E a distance of 472.00 feet to the point of the beginning AND A tract described as commencing at the Northeast corner of said NE1/4' thence S 01'24'13"E along the East line of said NE1/4 a distance of 1320.00 feet to the point of beginning; thence S 01'24'13"E a distance of 660.00 feet; thence S 89'47'30"W and parallel to the North line of said NE1/4 a distance of 472.00 feet; thence N 01'24'13"W a distance of 660.00 feet; thence N 89'47'30"E a distance of 472.00 feet to the point of beginning;

AND

A tract described as commencing at the NE/c of said NE1/4; thence S 01'24'13"E along the East line of said NE1/4 a distance of 1980.00 feet to the point of beginning; thence S 01'24'13"E a distance of 660.35 feet to the SE/c of said NE1/4' thence S 89'58'52"W and parallel to the South line of said NE1/4 a distance of 660.05 feet; thence N 01'24'13"W a distance of 660.00 feet to the point of beginning;

AND

A tract described as commencing at the Northeast corner of the NE1/4; thence S 01'24'13"E along the East line of said NE1/4 a distance of 1980.00 feet; thence S 89'47'30"W and parallel to the North line of said NE1/4 a distance of 472.00 feet to the point of beginning; thence S 89'47'30"W a distance of 188.00 feet; thence N 01'24'13"W a distance of 660.00 feet; thence N 89'47'30"E a distance of 188.00 feet; thence S 01'24'13"E a distance of 660.00 feet to the point of beginning.

14. Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of assets. Defendant knowingly and voluntarily waives all constitutional,

Defendant's Initials

legal, and equitable defenses to the forfeiture of these assets in any proceeding, and further waives any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture or disposition of assets by the United States, the State of Oklahoma, or its subdivisions. Defendant knowingly and voluntarily consents to the entry of a final order of forfeiture before sentencing as to Defendant's interest in the assets. Forfeiture of Defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon Defendant in addition to forfeiture.

15. Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with the forfeiture provided for herein. Defendant waives Defendant's right to notice of any forfeiture proceeding and agrees not to file a claim to the above-listed property or property involved in the underlying criminal conduct, or otherwise contest forfeiture in any civil, administrative, or judicial proceeding that may be initiated. Defendant further agrees not to assist others in filing a claim in a forfeiture proceeding or otherwise assist others who challenge a forfeiture action involving the above-listed property or property involved in the underlying criminal conduct. Defendant also voluntarily and immediately waives all right, title, and interest in and to the above-listed property in order that appropriate disposition may be made by the appropriate federal or state law enforcement agency.

Defendant's Initials

**Abandonment**

16. Defendant voluntarily agrees to abandon any and all right, title, interest, and claim, if any, in the following assets:

a. real property located at 432 South Mustang Road, Suite B, Yukon, Oklahoma 73099, fully described as:

> Lot Seven (7), in Block Five (5), of Westpointe Parkway Phase IV, a Replat of Block Two (2), Block One (1) Westpointe Parkway Phase II and a Part of the Northwest Quarter (NW/4) of Section Three (3), Township Eleven (11) North, Range Five (5) West of the Indian Meridian, Canadian County, Oklahoma, according to the United States Government survey thereof;
>
> AND
>
> An Undivided 1/10th interest in and to all of Common Area A and any other Common Areas as shown on the plat of Westpointe Parkway Phase IV, a replat of Lot 2, block 1, Westpointe Parkway Phase II and previously unplatted tract being a part of the Northwest Quarter (NW/4) of Section Three (3), Township Eleven (11) North, Range Five (5) West of the Indian Meridian, Canadian County, Oklahoma, being that interest conveyed under Quit Claim Deed Recorded in Book 2602, Page 399;

b. real property located at 51901 South 34900 Road, Pawnee, Oklahoma 74058, fully described as:

> The Southeast Quarter (SE/4) of the Southeast Quarter (SE/4) of Section Twenty-Nine (29), Township Twenty-One (21) North, Range Five (5) East I.M., in Pawnee County State of Oklahoma, according to the United States Government survey thereof;

c. a Ruger, model P95, 9mm caliber handgun, bearing serial number 317-84608;

d. a Springfield, model 1911, 9mm caliber handgun, bearing serial number NM540590 with two magazines;

Defendant's Initials

e. a Berretta, model A300 Outlander, 12-gauge shotgun, bearing serial number RU048764;

f. a Palmetto State Armory, model PA-15, .223 caliber rifle, bearing serial number SCD008173; and

g. a Springfield, model XD9, 9mm caliber pistol, bearing serial number S4944187.

17. Defendant acknowledges that pursuant to 41 C.F.R. §128-48.102-1, the United States must notify Defendant of Defendant's right to claim the above listed property; however, Defendant voluntarily waives the right to receive such notice. Defendant agrees not to contest the vesting of title of this property in the United States. Defendant further agrees not to assist others in filing a claim in an abandonment proceeding or otherwise assist others who challenge an abandonment action involving the above-listed property or property involved in the underlying criminal conduct.

18. Defendant voluntarily waives all right in this property in order that final disposition may be made by the appropriate federal, state, or local law enforcement agency. Defendant unconditionally releases and holds harmless the United States and its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, or suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the above-listed property. Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the abandonment of this asset in any proceeding, and further waives any claim or defense under the Eighth

Defendant's Initials

Amendment to the United States Constitution, including any claim of excessive fine, to the disposition of this asset by the United States, the State of Oklahoma, or its subdivisions. Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with the abandonment provided for herein. Defendant agrees that in the event that this Plea Agreement is voided for any reason, Defendant's abandonment of and the disposition of the property listed above shall survive and shall be given full force and effect.

**Sentencing Guidelines**

19. The parties acknowledge that 18 U.S.C. § 3553(a) directs the Court to consider certain factors in imposing sentence, including the Guidelines promulgated by the United States Sentencing Commission. Consequently, although the parties recognize that the Guidelines are only advisory, they have entered into certain stipulations and agreements with respect to the Guidelines. Based upon the information known to the parties on the date that this Plea Agreement is executed, they expect to take, but are not limited to, the following positions at sentencing:

a. The parties agree Defendant should receive a two-level downward adjustment for Defendant's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant commits no further crimes, does not falsely deny or frivolously contest relevant conduct, and fully complies with all other terms of this Plea Agreement. Further, if the Court applies that two-level downward adjustment, the United States will move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b) if it determines

Defendant's Initials

that Defendant qualifies for the additional adjustment based on the timeliness of Defendant's acceptance of this Plea Agreement and other appropriate considerations in U.S.S.G. § 3E1.1 and its application notes.

b. The parties also agree and stipulate that Defendant's relevant conduct in this case includes at least 10,000 KG but less than 30,000 KG of marijuana, correlating to a base offense level of 34 pursuant to U.S.S.G. §2D1.1(c)(3).

c. The parties also agree and stipulate that Defendant's relevant conduct supports the application of the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12), for maintaining a drug-involved premises.

d. The parties also agree and stipulate that Defendant's relevant conduct including using a special skill, namely utilizing his realtor and brokerage licenses, in a manner that significantly facilitated the commission of the offense, as contemplated in U.S.S.G. § 3B1.3.

Apart from any expressed agreements and stipulations, the parties reserve the right to advocate for, and present evidence relevant to, other Guidelines adjustments and sentencing factors for consideration by the United States Probation Office and the Court.

20. The parties have entered into this Plea Agreement under the provisions of Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B). Defendant acknowledges and understands that the Court is not bound by, nor obligated to accept, these stipulations, agreements, or recommendations of the United States or Defendant. And, even if the Court rejects one or more of these stipulations, agreements, or

Defendant's Initials

recommendations, that fact alone would not allow Defendant to withdraw Defendant's plea of guilty. Upon Defendant's signing of this Plea Agreement, the United States intends to end its investigation of the allegations in the Indictment, as to Defendant, except insofar as required to prepare for further hearings in this case, including but not limited to sentencing, and to prosecute others, if any, involved in Defendant's conduct. The United States agrees to end any investigation directed specifically at the foregoing stipulations, agreements, or recommendations as to Defendant. However, subject to the terms and conditions of this Plea Agreement and Plea Supplement, the United States expressly reserves the right to take positions that deviate from the foregoing stipulations, agreements, or recommendations in the event that material credible evidence requiring such a deviation is discovered during the course of its investigation after the signing of this Plea Agreement or arises from sources independent of the United States, including the United States Probation Office.

**Waiver of Right to Appeal and Bring Collateral Challenge**

21. Defendant understands that the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining Defendant's sentence. Defendant also understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum for the offense(s) to which Defendant is pleading guilty. Defendant further understands that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 give Defendant the right to appeal the judgment and sentence imposed by the Court. Acknowledging all of this, and in exchange for the promises and concessions made by the United States in this Plea Agreement, Defendant knowingly and voluntarily waives the following rights:

Defendant's Initials

a. Defendant waives the right to appeal Defendant's guilty plea, and any other aspect of Defendant's conviction, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues;

b. Except as stated immediately below, Defendant waives the right to appeal Defendant's sentence, including any restitution, and the manner in which the sentence is determined, including its procedural reasonableness. If the sentence is above the advisory Guidelines range determined by the Court to apply to Defendant's case, this waiver does not include Defendant's right to appeal the substantive reasonableness of Defendant's sentence;

c. Defendant waives the right to appeal or collaterally challenge the length and conditions of supervised release, as well as any sentence imposed upon a revocation of Defendant's supervised release. This waiver does not include Defendant's right to appeal the substantive reasonableness of a revocation sentence imposed pursuant to 18 U.S.C. § 3583(k) that is in excess of five years consecutive to any other sentence imposed for the same or related conduct;

d. Defendant waives the right to collaterally challenge or move to modify (under 28 U.S.C. § 2255, 18 U.S.C. § 3582(c)(2), or any other ground) Defendant's conviction or sentence, including any restitution, except with respect to claims of ineffective assistance of counsel. This waiver does not include Defendant's ability to file a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Defendant, however, waives the right to appeal the denial of any motion filed under 18 U.S.C.

Defendant's Initials

§ 3582(c)(1)(A)(i) where such denial rests in any part upon the Court's determination that a sentence reduction is not warranted under factors set forth in 18 U.S.C. § 3553(a).

Defendant acknowledges that these waivers remain in full effect and are enforceable, even if the Court rejects one or more of the positions of the United States or Defendant set forth in paragraph 19.

22. Except as stated immediately below, the United States agrees to waive its right under 18 U.S.C. § 3742 to appeal the sentence imposed by the Court and the manner in which the sentence was determined. If the sentence is below the advisory Guidelines range determined by the Court to apply in this case, this waiver does not include the right of the United States to appeal the substantive reasonableness of Defendant's sentence.

**Waiver of Claim to Prevailing Party Status**

23. Defendant expressly acknowledges that Defendant is not a "prevailing party" within the meaning of 18 U.S.C. § 3006A with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this Plea Agreement. If Defendant is represented by retained counsel, Defendant voluntarily, knowingly, and intelligently waives any rights Defendant may have to seek reasonable attorney's fees and other litigation expenses under 18 U.S.C. § 3006A.

Defendant's Initials

## Waiver of FOIA and Privacy Act Rights

24. Defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including but not limited to records that Defendant may seek under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

## Obligations of Defendant

25. Defendant shall commit no further crimes. Should Defendant commit any further crimes, knowingly give false, incomplete, or misleading testimony or information, flee from any pretrial or post-plea release, or otherwise violate any provision of this Plea Agreement, the United States will be released from any obligations, agreements, or restrictions imposed on it under this Plea Agreement, and the United States may prosecute Defendant for any and all of Defendant's federal criminal violations, including perjury and obstruction of justice. Any prosecution within the scope of this investigation that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be brought against Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of that prosecution. Defendant hereby waives all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Plea Agreement is signed.

Defendant's Initials

26. Defendant also hereby waives any right under Rule 11(d) and (e) of the Federal Rules of Criminal Procedure to withdraw from the guilty plea or this agreement, unless the Court determines, after a hearing, that the government has breached this Plea Agreement or Defendant can show a fair and just reason for requesting the withdrawal under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. If Defendant, after entry of a plea of guilty, unsuccessfully attempts to withdraw that guilty plea, this Plea Agreement will remain in effect; however, the United States will not be bound by any stipulations agreed to in this Plea Agreement.

27. Further, the parties agree that if the Court determines that Defendant has violated any provision of this Plea Agreement or authorizes Defendant to withdraw from Defendant's knowing and voluntary guilty plea entered pursuant to this Plea Agreement: (a) all written or oral statements made by Defendant to the Court or to federal or other designated law enforcement agents, any testimony given by Defendant before a grand jury or other tribunal, whether before or after the signing of this Plea Agreement, and any leads from those statements or testimony, shall be admissible evidence in any criminal proceeding brought against Defendant; and (b) Defendant shall assert no claim under the United States Constitution, any statute, Federal Rules of Criminal Procedure 11(d)(1) and 11(f), Federal Rule of Evidence 410, or any other federal rule or law that those statements or any leads from those statements should be suppressed. Defendant knowingly and voluntarily waives Defendant's rights described in this paragraph as of the time Defendant signs this Plea Agreement.

Defendant's Initials

**Obligations of the United States**

28. If Defendant enters a plea of guilty as described above and fully meets all obligations under this Plea Agreement, the United States will move to dismiss at sentencing Counts 3, 4, 5, 6, 7, and 8 of the Indictment and the United States Attorney's Office for the Western District of Oklahoma will not further prosecute Defendant for any crimes related to Defendant's participation in drug trafficking activity during the period from August 2019 through April 2, 2024. This Plea Agreement does not provide any protection against prosecution for any crime not specifically described above.

29. Defendant understands that the sentence to be imposed upon Defendant is within the sole discretion of the Court. The United States does not make any promise or representation as to what sentence Defendant will receive. The United States reserves the right to inform the United States Probation Office and the Court of the nature and extent of Defendant's activities with respect to this case and all other activities of Defendant that the United States deems relevant to sentencing.

Defendant's Initials

**Signatures**

30. By signing this Plea Agreement, Defendant acknowledges that Defendant has discussed the terms of the Plea Agreement with Defendant's attorney and understands and accepts those terms. Further, Defendant acknowledges that this Plea Agreement, in conjunction with the Plea Supplement filed contemporaneously under seal, contains the only terms of the agreement concerning Defendant's plea of guilty in this case, and that there are no other deals, bargains, agreements, or understandings which modify or alter these terms.

Dated this 1 day of June, 2026.

**APPROVED:**

ROBERT J. TROESTER
United States Attorney

BRANDON HALE
Deputy Chief, Criminal Division

Elizabeth M. Bagwell

ELIZABETH M. BAGWELL
Assistant U.S. Attorney
Western District of Oklahoma
210 Park Avenue, Ste. 400
Oklahoma City, Oklahoma 73102
(405) 553-8787 (Office)
(405) 553-8888 (FAX)

Todd Pugh

CHONG "ALEX" PHU
Defendant

TODD PUGH
Attorney for Defendant

Defendant's Initials